UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X    **Case No. 1:10-cv-05605-JSR**
ZOLTAN HIRSCH,

                                          Plaintiff,

           -vs-

SWEET SOUR CORP., a New York Corporation, d/b/a
DELIGHT IN THE CITY, CORP., d/b/a TASTI D-
LITE, and 916-918 THIRD AVENUE LLC, a New
York limited liability company,

                                          Defendants.
-------------------------------------------------------------X

### Defendant 916-918 Third Avenue LLC's Response to Plaintiff's First Set of Interrogatories

Defendant, 916-918 THIRD AVENUE LLC ("Landlord") by its attorney, JUDITH M.

BRENER, ESQ., answers the First Set of Interrogatories of Plaintiff Zoltan Hirsch ("Plaintiff")

as follows:

1.      Please provide the name, address and telephone number, place of employment
and job title of any person who has, claims to have or whom you believe may have knowledge or
information pertaining to any fact alleged in the pleadings (as defined in Fed.R.Civ.P. 7(a)), filed
in this action, or any fact underlying the subject matter of this action.

ANSWER:  Landlord objects to this interrogatory in that it is overbroad.  However,

subject to this objection, Landlord provides the following information: Abdul Rashid, 916-918

Third Avenue, New York, New York; Sadaqut Ali Butt, 916-918 Third Avenue, New York, New

York; Tel (212) 433-0748.  Mr. Rashid and Mr. Butt are tenants of the premises.  Upon

information and belief, Plaintiff's counsel has been in contact with the attorney for Messrs.

Rashid and Butt.

2.      Please state the specific nature and substance of the knowledge that you believe
the person(s) identified in your response to Interrogatory number 1 may have.

ANSWER:  As set forth above, Mr. Rashid and Mr. Butt are tenants of the premises. Pursuant to their lease agreement, they maintain and operate the property and are responsible for making sure the property is in compliance in accordance with applicable laws.


3.      Please state the names, addresses, representatives and all entities that own or operate any part of the public accommodations described in the Complaint and state the specific nature of that entities interest in the premises.

ANSWER: Landlord objects to this interrogatory as irrelevant, overbroad and unlikely to lead to discoverable information. Subject to this objection, Landlord states that Landlord is the owner of the building known as 916-198 Third Avenue, New York, New York. The premises at issue is operated by the individuals listed in #1 above.


4.      Please state in detail the substance of the opinions to be provided by each person whom you may use an expert witness at trial.

ANSWER: At this time, the Landlord does not have any expert opinions to offer at trial. However, Landlord reserves its right to supplement its response closer to trial.


5.      Please identify any document, including pertinent agreements, deeds, and leases pertaining to any fact alleged in any pleading.

ANSWER:  Landlord objects to this interrogatory as overbroad and unduly burdensome. Subject to this objection, a copy of the lease agreement for the premises is annexed as **Exhibit A**.


DATED: New York, New York
          April 29, 2011


Judith M. Brener, Esq.
By: Jeffrey M. Goldman, Esq.
Attorney for Defendant
916-918 Third Avenue LLC
640 Fifth Avenue, Third Floor
New York, New York 10019
Tel. (212) 265-2171

## VERIFICATION

STATE OF NEW YORK      )
                                     ) ss.:
COUNTY OF NEW YORK  )

             LOUISA LITTLE, being duly sworn, deposes and says:

             I am a Manager of 916-918 Third Avenue LLC, a defendant in this action.  I have read the foregoing Defendant 916-918 Third Avenue LLC's Response to Plaintiff's First Set of Interrogatoriesand the contents thereof.  The same is true to my own knowledge, except as to the matters stated to be upon information and belief, and as to those matters I believe them to be true.  The grounds for my belief as to all matters not stated to be upon my knowledge are the books and records of aforementioned Defendant and/or conversations with said Defendant's employees and/or agents.

                                              LOUISA LITTLE

Sworn to before me this
2ND day of April 2011
       MAY

                        
Notary Public

JEFFREY M. GOLDMAN
Notary Public, State of New York
No. 31-4644039
Qualified in New York County
My Commission Expires Nov. 30, 2013

RM/interrogatory responses-04292011.doc

3

# EXHIBIT A

### LEASE EXTENSION AGREEMENT

   **AGREEMENT** dated this **10**[TH] day of **DECEMBER 2004** by and between **916-918 THIRD AVENUE LLC C/O LIGHTHOUSE PROPERTIES LLC**, as Landlord having an office at 640 Fifth Avenue, New York, New York 10019, as Landlord and **ABDUL RASHID and SADAQUT ALI BUTT**, as Tenant. #729   ST.2

   **WHEREAS**, Tenant presently occupies a **STORE** at **916-918 THIRD AVENUE, NEW YORK, NY**, under lease dated **MAY 17, 1995** and various modifications by and between **JANE GOLDMAN, ALLAN GOLDMAN AND LOUISA LITTLE AS CO-TRUSTEES OF THE LILLIAN GOLDMAN MARITAL TRUST C/O LIGHTHOUSE PROPERTIES by various transfers to 916-918 THIRD AVENUE LLC C/O LIGHTHOUSE PROPERTIES LLC**, as Landlord and **ABDUL RASHID and SADAQUT ALI BUTT**, as Tenant, and,

   **WHEREAS**, Landlord and Tenant desire to extend and modify the terms, covenants and conditions of said lease, it is,

   **THEREFORE**, understood and agreed that the hereinabove described lease shall be extended and modified under the following terms and conditions:

   1.   The term of the aforementioned lease shall be extended for a period of **FIVE (5) YEARS** commencing **JUNE 1, 2005** and expiring **MAY 31, 2010** at the rate of:

   **ONE HUNDRED FOURTEEN THOUSAND DOLLARS ($114,000.00)** per annum payable in monthly installments of **NINE THOUSAND FIVE HUNDRED DOLLARS ($9,500.00)** from 6/1/2005 to 5/31/2008;

   **ONE HUNDRED SEVENTEEN THOUSAND DOLLARS ($117,000.00)** per annum payable in monthly installments of **NINE THOUSAND SEVEN HUNDRED FIFTY DOLLARS ($9,750.00)** from 6/1/2008 to 5/30/2010.

   2.   It is understood and agreed that the Tenant shall clean up the store and maintain it in a clean condition.

   3.   Except as hereinabove specifically modified or extended, all the remaining terms, covenants and conditions of the lease dated **MAY 17, 1995** and various modifications thereof shall remain the same.

   4.   Tenant shall pay upon execution hereof the sum of **$1,500.00** deemed additional security which when added to tenant's present security will bring total security deposit to **$19,500.00**.

   5.   It is understood and agreed that this extension is not binding until executed by Landlord and delivered to Tenant.

| AGREED AND ACCEPTED | AGREED AND ACCEPTED |
|---|---|
| 916-918 THIRD AVENUE LLC | ABDUL RASHID and |
| c/o LIGHTHOUSE PROPERTIES | SADAQUT ALI BUTT |
| | |
| LANDLORD | TENANT |

918 Third Avenue

## LEASE ABSTRACT - CHANGE IN TENANCY

PLEASE INITIAL
Bookkeeping Dept.:_____          BUILDING#:**SMC # 204/729**
Leasing Dept.:_____          DATE:**May 25, 1995**
Renting Dept.:_____          LEASE DATE:**5/17/95**

                    New                              New
Renewal:___  Lease:_**X**_ Modification:___ Assignment:_____ Acquisition_____

Tenant:**ABDUL RASHID AND SADAQUT ALI BUTT**  Tele.#_____

Location:**916-918 THIRD AVE**   Space:**STORE F/O/B THIRD AVE ART GALLERY (MIDDLE**
                                        **STORE)**

Lease Term:**6/1/95-5/31/2005**      Security:   **\* $18,000.00**_____

Rent Commences:**9/1/95 THREE MONTHS FREE RENT** Possession on:_____

Use & Occupancy:**Sale of candy, nuts, ice cream, deserts, popcorn,**
**perfumes and gift items**

Annual Rental:**$84,000.00 6/1/95-5/31/96** Monthly: $7,000.00 _____
              **$96,000.00 6/1/96-5/31/200** 5/31/02 $8,000.00 8500 ___
              **$108,000.00 6/1/200-5/31/2005**  $9,000.00 _____

Tax Coverage:**25**%   Block#**1310** Lot#_**34/35**_  1995/1996  :$_____

Labor Rate: Sq Ft:_____Year Ending-12/31/:$_____

Options:_____

        _____

Sub-Leasing/Assigning:**TWO TIMES WITH PRIOR WRITTEN CONSENT OF LANDLORD**

Insurance:_____

REMARKS:_____

        _____

<u>Electricity</u>-Metered_____  Sub-Metered:___  Rent Inclusion___P/A____P/M_____

<u>Water</u>:_____ <u>Sprinkler</u>:_____ <u>Cleaning</u>:_____

<u>Heat</u>:_____ <u>Stream</u>:_____ <u>Painting</u>:_____

<u>Passenger Elevators</u>-Weekdays:_____  Weekends:_____  <u>Freight</u>_____

<u>Air Conditioning</u>:_____

REMARKS:_**\* Attached are THREE (3) checks one for $7000.00 for rent for September**
**and Two (2) each for $9,000.00. for Security.**

## STANDARD FORM OF STORE LEASE
### The Real Estate Board of New York, Inc.

2/94-A

**Agreement of Lease,** made as of this          17TH          day of     May          19     95     ,between
Jane Goldman, Allan Goldman and Louisa Little as Co-Trustees of The Lillian GOldman
Marital Trust C/O Lighthouse Properties, 640 5th Ave, NY NY 10019
party of the first part, hereinafter referred to as OWNER, and

Abdul Rashid   and   Sadaqut Ali Butt

party of the second part, hereinafter referred to as TENANT,

**Witnesseth:**     Owner hereby leases to Tenant and Tenant hereby hires from Owner

Store f/O/B Third ave Art Gallery (Middle Store)
in the building known as   916-918 Third ave
in the Borough of   Manhattan        , City of New York, for the term of      Ten (10) Years

(or until such term shall sooner cease and expire as hereinafter provided) to commence on the
1st      day of     June        nineteen hundred and     Ninety Five       , and to end on the
31st      day of    May        Two Thousand     and      Five
both dates inclusive, at an annual rental rate of

### See Paragraph # 62

which Tenant agrees to pay in lawful money of the United States which shall be legal tender in payment of all debts and dues, public and private, at the time of payment, in equal monthly installments in advance on the first day of each month during said term, at the office of Owner or such other place as Owner may designate, without any set off or deduction whatsoever, except that Tenant shall pay the first          monthly installment(s) on the execution hereof (unless this lease be a renewal).

In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner may at Owner's option and without notice to Tenant add the amount of such arrears to any monthly installment of rent payable hereunder and the same shall be payable to Owner as additional rent.

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby covenant as follows:

**Rent:**     1. Tenant shall pay the rent as above and as hereinafter provided.
**Occupancy:**     2. Tenant shall use and occupy demised premises for Sale of Candy, Nuts, Ice Cream, deserts,
popcorn, perfumes and gifts items.

and for no other purpose. Tenant shall at all times conduct its business in a high grade and reputable manner, shall not violate Article 37 hereof, and shall keep show windows and signs in a neat and clean condition.

**Alterations:**     3. Tenant shall make no changes in or to the demised premises of any nature without Owner's prior written consent. Subject to the prior written consent of Owner, and to the provisions of this article, Tenant, at Tenant's expense, may make alterations, installations, additions or improvements which are non-structural and which do not affect utility services or plumbing and electrical lines, in or to the interior of the demised premises by using contractors or mechanics first approved in each instance by Owner. Tenant shall, before making any alterations, additions, installations or improvements, at its expense, obtain all permits, approvals and certificates required by any governmental or quasi-governmental bodies and (upon completion) certificates of final approval thereof and shall deliver promptly duplicates of all such permits, approvals and certificates to Owner and Tenant agrees to carry and will cause Tenant's contractors and sub-contractors to carry such workman's compensation, general liability, personal and property damage insurance as Owner may require. If any mechanic's lien is filed against the demised premises, or the building of which the same forms a part, for work claimed to have been done for, or materials furnished to, Tenant, whether or not done pursuant to this article, the same shall be discharged by Tenant within 30 days thereafter, at Tenant's expense, by payment or filing the bond required by law. All fixtures and all paneling, partitions, railings and like installations, installed in the premises at any time, either by Tenant or by Owner on Tenant's behalf, shall, upon installation, become the property of Owner and shall remain upon and be surrendered with the demised premises unless Owner, by notice to Tenant no later than twenty days prior to the date fixed as the termination of this lease, elects to relinquish Owner's rights thereto and to have them removed by Tenant, in which event, the same shall be removed from the premises by Tenant prior to the expiration of the lease, at Tenant's expense. Nothing in this article shall be construed to give Owner title to or to prevent Tenant's removal of trade fixtures, moveable office furniture and equipment, but upon removal of any such from the premises or upon removal of other installation as may be required by Owner, Tenant shall immediately and at its expense, repair and restore the premises to the condition existing prior to installation and repair any damage to the demised premises or the building due to such removal. All property permitted or required to be removed by Tenant at the end of the term remaining in the premises after Tenant's removal shall be deemed abandoned and may, at the election of Owner, either be retained as Owner's property or may be removed from the premises by Owner at Tenant's expense.

**Repairs:**     4. Owner shall maintain and repair the public portions of the building, both exterior and interior, except that if Owner allows Tenant to erect on the outside of the building a sign or signs, or a hoist, lift or sidewalk elevator for the exclusive use of Tenant, Tenant shall maintain such exterior installations in good appearance and shall cause the same to be operated in a good and workmanlike manner and shall make all repairs thereto necessary to keep same in good order and condition, at Tenant's own cost and expense, and shall cause the same to be covered by the insurance provided for hereafter in Article 8. Tenant

shall, throughout the term of this lease, take good care of the demised premises and the fixtures and appurtenances therein, and the sidewalks adjacent thereto, and at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them in good working order and condition, reasonable wear and tear, obsolescence and damage from the elements, fire or other casualty, excepted. If the demised premises be or become infested with vermin, Tenant shall at Tenant's expense, cause the same to be exterminated from time to time to the satisfaction of Owner. Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner, Tenant or others making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building including the erection or operation of any crane, derrick or sidewalk shed, or in or to the demised premises or the fixtures, appurtenances or equipment thereof. It is specifically agreed that Tenant shall be not entitled to any set off or reduction of rent by reason of any failure of Owner to comply with the covenants of this or any other article of this lease. Tenant agrees that Tenant's sole remedy at law in such instance will be by way of an action for damages for breach of contract. The provisions of this Article 4 with respect to the making of repairs shall not apply in the case of fire or other Casualty which are dealt with in Article 9 hereof.

**Window Cleaning:**     5. Tenant will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside in violation of Section 202 of the New York State Labor Law or any other applicable law or of the Rules of the Board of Standards and Appeals, or of any other Board or body having or asserting jurisdiction.

**Requirements of Law, Fire Insurance:**     6. Prior to the commencement of the lease term, if Tenant is then in possession, and at all times thereafter, Tenant, at Tenant's sole cost and expense, shall promptly comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards and any direction of any public officer pursuant to law, and all orders, rules and regulations of the New York Board of Fire Underwriters or the Insurance Services Office, or any similar body which shall impose any violation, order or duty upon Owner or Tenant with respect to the demised premises, and with respect to the portion of the sidewalk adjacent to the premises, if the premises are on the street level, whether or not arising out of Tenant's use or manner of use thereof, or with respect to the building if arising out of Tenant's use or manner of use of the premises or the building (including the use permitted under the lease). Except as provided in Article 29 hereof, nothing herein shall require Tenant to make structural repairs or alterations unless Tenant has by its manner of use of the demised premises or method of operation therein, violated any such laws, ordinances, orders, rules, regulations or requirements with respect thereto. Tenant shall not do

or permit any act or thing to be done in or to the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Owner.  Tenant shall pay all costs, expenses, fines, penalties or damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this article.  If the fire insurance rate shall, at the beginning of the lease or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which shall have been charged because of such failure by Tenant, to comply with the terms of this article.  In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" of rate for the building or demised premises issued by a body making fire insurance rates applicable to said premises shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rate then applicable to said premises.

**Sub-ordination:**  **7.** This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect such leases or the real property of which demised premises are a part and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages.  This clause shall be self-operative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease or the real property of which the demised premises are a part.  In confirmation of such subordination, Tenant shall from time to time execute promptly any certificate that Owner may request.

**Tenant's Liability Insurance Property Loss, Damage, Indemnity:**  **8.** Owner or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees or the building, nor for loss of or damage to any property of Tenant by theft or otherwise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servants or employees.  Owner or its agents will not be liable for any such damage caused by other tenants or persons in, upon or about said building or caused by operations in construction of any private, public or quasi public work.  Tenant agrees, at Tenant's sole cost and expense, to maintain general public liability insurance in standard form in favor of Owner and Tenant against claims for bodily injury or death or property damage occurring in or upon the demised premises, effective from the date Tenant enters into possession and during the term of this lease.  Such insurance shall be in an amount and with carriers acceptable to the Owner.  Such policy or policies shall be delivered to the Owner.  On Tenant's default in obtaining or delivering any such policy or policies or failure to pay the charges therefor, Owner may secure or pay the charges for any such policy or policies and charge the Tenant as additional rent therefor.  Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall be reimbursed by insurance, including reasonable attorneys fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agent, contractors, employees, invitees, or licensees, of any covenant on condition of this lease, or the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees.  Tenant's liability under this lease extends to the acts and omissions of any subtenant, and any agent, contractor, employee, invitee or licensee of any subtenant.  In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Owner in writing, such approval not to be unreasonably withheld.

**Destruction, Fire, and Other Casualty:**  **9.** (a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall  give immediate notice thereof to Owner and this lease shall continue in full force and effect except as hereinafter set forth.  (b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damages thereto shall be repaired by and at the expense of Owner and the rent and other items of additional rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the premises which is usable.  (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent and other items of additional rent as hereinafter expressly provided shall be proportionately paid up to the time of the casualty and thenceforth shall cease until the date when the premises shall have been repaired and restored by Owner (or sooner reoccupied in part by Tenant then rent shall be apportioned as provided in subsection (b) above), subject to Owner's right to elect not to restore the same as hereinafter provided.  (d) If the demised premises are rendered wholly unusable or (whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then, in any of such events, Owner may elect to terminate this lease by written notice to Tenant given within 90 days after such fire or casualty or 30 days after adjustment of the insurance claim for such fire or casualty, whichever is sooner, specifying a date for the expiration of the lease, which date shall not be more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date set forth above for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the premises without prejudice however, to Owner's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant.  Unless Owner shall serve a termination notice as provided for herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control.  After any such casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property.  Tenant's liability for rent shall resume five (5) days after written notice from Owner that the premises are substantially ready for Tenant's occupancy. (e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty.  Notwithstanding the foregoing, including Owner's obligation to restore under subparagraph (b) above, each party shall

☞  **Rider to be added if necessary.**

look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, Owner and Tenant each hereby releases and waives all right of recovery with respect to subparagraphs (b), (d) and (e) above, against the other or any one claiming through or under each of them by way of subrogation or otherwise.  The release and waiver herein referred to shall be deemed to include any loss or damage to the demised premises and/or to any personal property, equipment, trade fixtures, goods and merchandise located therein.  The foregoing release and waiver shall in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance.  Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements, or appurtenances removable by Tenant and agrees that Owner will not be obligated to repair any damage thereto or replace the same.  (f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

**Eminent Domain:**  **10.** If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim for the value of any unexpired term of said lease.  Tenant shall have the right to make an independent claim to the condemning authority for the value of Tenant's moving expenses and personal property, trade fixtures and equipment, provided Tenant is entitled pursuant to the terms of the lease to remove such property, trade fixtures and equipment at the end of the term and provided further such claim does not reduce Owner's award.

**Assignment, Mortgage, Etc.:**  **11.** Tenant, for itself, its heirs, distributees, executors, administrators, legal representatives, successors and assigns expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Owner in each instance.  Transfer of the majority of the stock of a corporate tenant or the majority partnership interest of a partnership tenant shall be deemed an assignment.  If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Owner may, after default by Tenant, collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of the covenant, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained.  The consent by Owner to an assignment or underletting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting.

**Electric Current:**  **12.** Rates and conditions in respect to submetering or rent inclusion, as the case may be, to be added in RIDER attached hereto.  Tenant covenants and agrees that at all times its use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation and Tenant may not use any electrical equipment which, in Owner's opinion, reasonably exercised, will overload such installations or interfere with the use thereof by other tenants of the building.  The change at any one of the character of electric service shall in no wise make Owner liable or responsible to Tenant, for any loss, damages or expenses which Tenant may sustain.

**Access to Premises:**  **13.** Owner or Owner's agents shall have the right (but shall not be obligated) to enter the demised premises in any emergency at any time, and, at other reasonable times, to examine the same and to make such repairs, replacements and improvements as Owner may deem necessary and reasonably desirable to any portion of the building or which Owner may elect to perform, in the premises, following Tenant's failure to make repairs or perform any work which Tenant is obligated to perform under this lease, or for the purpose of complying with laws, regulations and other directions of governmental authorities.  Tenant shall permit Owner to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes and conduits therein, provided they are concealed within the walls, floors or ceiling, wherever practicable.  Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction nor shall the Tenant be entitled to any abatement of rent while such work is in progress nor to any damages by reason of loss or interruption of business or otherwise.  Throughout the term hereof Owner shall have the right to enter the demised premises at reasonable hours for the purpose of showing the same to prospective purchasers or mortgagees of the building, and during the last six months of the term for the purpose of showing the same to prospective tenants and may, during said six months period, place upon the demised premises the usual notice "To Let" and "For Sale" which notices Tenant shall permit to remain thereon without molestation.  If Tenant is not present to open and permit an entry into the demised premises, Owner or Owner's agents may enter the same whenever such entry may be necessary or permissible by master key or forcibly and provided reasonable care is exercised to safeguard Tenant's property, such entry shall not render Owner or its agents liable therefor, nor in any event shall the obligations of Tenant hereunder be affected.  If during the last month of term Tenant shall have removed all or substantially all of Tenant's property therefrom, Owner may immediately enter, alter, renovate or redecorate the demised premises without limitation or abatement of rent, or incurring liability to Tenant for any compensation and such act shall have no effect on this lease or Tenant's obligations hereunder.  Owner shall have the right at any time, without the same constituting an eviction and without incurring liability to Tenant therefor to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets, or other public parts of the building and to change the name, number or designation by which the building may be known.

**Vault, Vault Space, Area:**  **14.** No vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding.  Owner makes no representation as to the location of the property line of the

building. All vaults and vault space are all such areas not within the property line of the building, which Tenant may be permitted to use and/or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault or area shall be paid by Tenant.

**Occupancy:**    **15.** Tenant will not at any time use or occupy the demised premises in violation of Articles 2 or 37 hereof, or of the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the premises and accepts them as is, subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the premises and Tenant agrees to accept the same subject to violations whether or not of record.

**Bankruptcy:**    **16.** (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Landlord by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant as the debtor; or (2) the making by Tenant of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) It is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant as and for liquidated damages an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demised premises for the same period. In the computation of such damages the difference between any installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four percent (4%) per annum. If such premises or any part thereof be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such re-letting shall be deemed to be the fair and reasonable rental value for the part or the whole of the premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above.

**Default:**    **17.** (1) If Tenant defaults in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent; or if the demised premises become vacant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be rejected under Section 365 of Title II of the U.S. Code (Bankruptcy Code); or if Tenant shall fail to move into or take possession of the premises within thirty (30) days after the commencement of the term of this lease, of which fact Owner shall be the sole judge; then, in any one or more of such events, upon Owner serving a written fifteen (15) days notice upon Tenant specifying the nature of said default and upon the expiration of said fifteen (15) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said fifteen (15) day period, and if Tenant shall not have diligently commenced curing such default within such fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default, then Owner may serve a written five (5) days notice of cancellation of this lease upon Tenant, and upon the expiration of said five (5) days, this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such five (5) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; or if Tenant shall make default in the payment of the rent reserved herein or any item of additional rent herein mentioned or any part of either or in making any other payment herein required; then and in any of such events Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of demised premises and remove their effects and hold the premises as if this lease had not been made, and Tenant hereby waives the service of notice of intention to re-enter or to institute legal proceedings to that end.

**Remedies of**    **18.** In case of any such default, re-entry, expiration
**Owner and**    and/or dispossess by summary proceedings or other
**Waiver of**    wise, (a) the rent, and additional rent, shall become
**Redemption:**    due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration. (b) Owner may re-let the premises or any part or parts thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease and may grant concessions or free rent or charge a higher rental than that in this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Owner as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the subsequent lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of

the term of this lease. The failure of Owner to re-let the premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, reasonable attorneys' fees, brokerage, advertising and for keeping the demised premises in good order or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgement, considers advisable and necessary for the purpose of re-letting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability. Owner shall in no event be liable in any way whatsoever for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rent collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant or any of the covenants or provisions hereof, Owner shall have the right of injunction and the right to invoke any remedy allowed at law or in equity as if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws.

**Fees and**    **19.** If Tenant shall default in the observance or
**Expenses:**    performance of any term or covenant on Tenant's part to be observed or performed under or by virtue of any of the terms or provisions in any article of this lease, after notice if required and upon expiration of any applicable grace period if any, (except in an emergency), then, unless otherwise provided elsewhere in this lease, Owner may immediately or at any time thereafter and without notice perform the obligation of Tenant thereunder, and if Owner, in connection therewith or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to reasonable attorney's fees, in instituting, prosecuting or defending any actions or proceeding and prevails in any such action or proceeding, such sums so paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within ten (10) days of rendition of any bill or statement to Tenant therefor, and if Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages.

**No Repre-**    **20.** Neither Owner nor Owner's agent have made
**sentations by**    any representations or promises with respect to the
**Owner:**    physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation, or any other matter or thing affecting or related to the premises except as herein expressly set forth and no rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition, and agrees to take the same "as is" and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant and any executory agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

**End of**    **21.** Upon the expiration or other termination of the
**Term:**    term of this lease, Tenant shall quit and surrender to Owner the demised premises, broom clean, in good order and condition, ordinary wear excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday unless it be a legal holiday in which case it shall expire at noon on the preceding business day.

**Quiet**    **22.** Owner covenants and agrees with Tenant that
**Enjoyment:**    upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 33 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to**    **23.** If Owner is unable to give possession of the
**Give**    demised premises on the date of the commencement
**Possession:**    of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants, or if the premises are located in a building being constructed, because such building has not been sufficiently completed to make the premises ready for occupancy or because of the fact that a certificate of occupancy has not been procured or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any wise to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for the inability to obtain possession or complete construction) until after Owner shall have given Tenant written notice that the Owner is able to deliver possession in the condition required by this lease. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease, Tenant covenants and agrees that such possession and/or occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease except the obligation to pay the fixed annual rent set forth in page

one of this lease. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:**
24. The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by Owner of rent and/or additional rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed in acceptance of a surrender of said premises and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of said premises prior to the termination of the lease and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the premises.

**Waiver of Trial by Jury:**
25. It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of or in any way connected with this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of said premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commences any proceeding or action for possession including a summary proceeding for possession of the premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding, including a counterclaim under Article 4 except for statutory mandatory counterclaims.

**Inability to Perform:**
26. This lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no wise be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease or to supply or is delayed in supplying any service expressly or impliedly to be supplied or is unable to make, or is delayed in making any repair, additions, alterations or decorations or is unable to supply or is delayed in supplying any equipment, fixtures or other materials if Owner is prevented or delayed from so doing by reason of strike or labor troubles, government preemption or restrictions or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency or by reason of the conditions of which have been or are affected, either directly or indirectly, by war or other emergency, or when, in the judgement of Owner, temporary interruption of such services is necessary by reason of accident, mechanical breakdown, or to make repairs, alterations or improvements.

**Bills and Notices:**
27. Except as otherwise in this lease provided, a bill, statement, notice or communication which Owner may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if, in writing, delivered to Tenant personally or sent by registered or certified mail addressed to Tenant at the building of which the demised premises form a part or at the last known residence address or business address of Tenant or left at any of the aforesaid premises addressed to Tenant, and the time of the rendition of such bill or statement and of the giving of such notice or communication shall be deemed to be the time when the same is delivered to Tenant, mailed, or left at the premises as herein provided. Any notice by Tenant to Owner must be served by registered or certified mail addressed to Owner at the address first hereinabove given or at such other address as Owner shall designate by written notice.

**Water Charges:**
28. If Tenant requires, uses or consumes water for any purpose in addition to ordinary lavatory purposes (of which fact Tenant constitutes Owner to be the sole judge) Owner may install a water meter and thereby measure Tenant's water consumption for all purposes. Tenant shall pay Owner for the cost of the meter and the cost of the installation thereof and throughout the duration of Tenant's occupancy Tenant shall keep said meter and installation equipment in good working order and repair at Tenant's own cost and expense. Tenant agrees to pay for water consumed, as shown on said meter as and when bills are rendered. Tenant covenants and agrees to pay the sewer rent, charge or any other tax, rent, levy or charge which now or hereafter is assessed, imposed or a lien upon the demised premises or the realty of which they are part pursuant to law, order or regulation made or issued in connection with the use, consumption, maintenance or supply of water, water system or sewage or sewage connection or system. The bill rendered by Owner shall be payable by Tenant as additional rent. If the building or the demised premises or any part thereof be supplied with water through a meter through which water is also supplied to other premises Tenant shall pay to Owner as additional rent, on the first day of each month,
 _____ % ($ _____ ) of the total meter charges, as Tenant's portion. Independently of and in addition to any of the remedies reserved to Owner hereinabove or elsewhere in this lease, Owner may sue for and collect any monies to be paid by Tenant or paid by Owner for any of the reasons or purposes hereinabove set forth.

**Sprinklers:**
29. Anything elsewhere in this lease to the contrary notwithstanding, if the New York Board of Fire Underwriters or the Insurance Services Office or any bureau, department or official of the federal, state or city government require or recommend the installation of a sprinkler system or that any changes, modifications, alterations, or additional sprinkler heads or other equipment be made or supplied in an existing sprinkler system by reason of Tenant's business, or the location of partitions, trade fixtures, or other contents of the demised premises, or for any other reason, or if any such sprinkler system

**Space to be filled in or deleted.**

---

installations, changes, modifications, alterations, additional sprinkler heads or other such equipment, become necessary to prevent the imposition of a penalty or charge against the full allowance for a sprinkler system in the fire insurance rate set by any said Exchange or by any fire insurance company, Tenant shall, at Tenant's expense, promptly make such sprinkler system installations, changes, modifications, alterations, and supply additional sprinkler heads or other equipment as required whether the work involved shall be structural or non-structural in nature. Tenant shall pay to Owner as additional rent the sum of $ _____ , on the first day of each month during the term of this lease, as Tenant's portion of the contract price for sprinkler supervisory service.

**Elevators, Heat, Cleaning:**
30. As long as Tenant is not in default under any of the covenants of this lease beyond the applicable grace period provided in this lease for the curing of such defaults, Owner shall, if and insofar as existing facilities permit furnish heat to the demised premises, when and as required by law, on business days from 8:00 a.m. to 6:00 p.m. and on Saturdays from 8:00 a.m. to 1:00 p.m. Tenant shall at Tenant's expense, keep demised premises clean and in order, to the satisfaction to Owner, and if demised premises are situated on the street floor, Tenant shall, at Tenant's own expense, make all repairs and replacements to the sidewalks and curbs adjacent thereto, and keep said sidewalks and curbs free from snow, ice, dirt and rubbish. Tenant shall pay to Owner the cost of removal of any of Tenant's refuse and rubbish from the building. Bills for the same shall be rendered by Owner to Tenant at such times as Owner may elect and shall be due and payable when rendered, and the amount of such bills shall be deemed to be, and be paid as, additional rent. Tenant shall, however, have the option of independently contracting for the removal of such rubbish and refuse in the event that Tenant does not wish to have same done by employees of Owner. Under such circumstances, however, the removal of such refuse and rubbish by others shall be subject to such rules and regulations as, in the judgment of Owner, are necessary for the proper operation of the building.

**Security:**
31. Tenant has deposited with Owner the sum of $ **18,000.00** ★ security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Owner may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent or any other sum as to which Tenant is in default or for any sum which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the re-letting of the premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the Lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Owner shall have the right to transfer the security to the vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such security, and Tenant agrees to look to the new Owner solely for the return of said security; and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to a new Owner. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security and that neither Owner nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

★ **Non–Interest Bearing**

**Captions:**
32. The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provision thereof.

**Definitions:**
33. The term "Owner" as used in this lease means only the Owner, or the mortgagee in possession, for the time being of the land and building (or the Owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales of said land and building or of said lease, or in the event of a lease of said building, or of the land and building, the said Owner shall be and hereby is entirely freed and relieved of all covenants and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties of their successors in interest, or between the parties and the purchaser, at any such sale, or the said lessee of the building, or of the land and building, that the purchaser or the lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Owner hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business days" as used in this lease shall exclude Saturdays, Sundays and all days designated as holidays by the applicable building service union employees service contract or by the applicable Operating Engineers contract with respect to HVAC service. Wherever it is expressly provided in this lease that consent shall not be unreasonably withheld, such consent shall not be unreasonably delayed.

**Adjacent Excavation-Shoring:**
34. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, license to enter upon the demised premises for the purpose of doing such work as said person shall deem necessary to preserve the wall or the building of which demised premises form a part from injury or damage and to support the same by proper foundations without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:**
35. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with the Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Owner or Owner's agents, the

parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto.   The right to dispute the reasonableness of any additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing upon Owner within fifteen (15) days after the giving of notice thereof.  Nothing in this lease contained shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant and Owner shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

**Glass:**  **36.** Owner shall replace, at the expense of Tenant, any and all plate and other glass damaged or broken from any cause whatsoever in and about the demised premises.  Owner may insure, and keep insured, at Tenant's expense, all plate and other glass in the demised premises for and in the name of Owner.  Bills for the premiums therefor shall be rendered by Owner to Tenant at such times as Owner may elect, and shall be due from, and payable by, Tenant when rendered, and the amount thereof shall be deemed to be, and be paid as, additional rent.

**Pornographic Uses Prohibited:**  **37.** Tenant agrees that the value of the demised premises and the reputation of the Owner will be seriously injured if the premises are used for any obscene or pornographic purposes or any sort of commercial sex establishment.  Tenant agrees that Tenant will not bring or permit any obscene or pornographic material on the premises, and shall not permit or conduct any obscene, nude, or semi-nude live performances on the premises, nor permit use of the premises for nude modeling, rap sessions, or as a so called rubber goods shops, or as a sex club of any sort, or as a "massage parlor." Tenant agrees further that Tenant will not permit any of these uses by any sublessee or assignee of the premises.  This Article shall directly bind any Successors in interest to the Tenant.  Tenant agrees that if at any time Tenant violates any of the provisions of this Article, such violation shall be deemed a breach of a substantial obligation of the terms of this lease and objectionable conduct.  Pornographic material is defined for purposes of this Article as any written or pictorial manner with prurient appeal or any objects of instrument that are primarily concerned with lewd or prurient sexual activity.  Obscene material is defined here as it is in Penal law §235.00.

**Estoppel Certificate:**  **38.** Tenant, at any time, and from time to time, upon at least 10 days prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation designated by Owner, a statement certifying that this lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications), stating the dates which the rent and additional rent have been paid, and stating whether or not there exists any defaults by Owner under this lease, and, if so, specifying each such default.

**Successors and Assigns:**  **39.** The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in this lease, their assigns.  Tenant shall look only to Owner's estate and interest in the land and building for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) against Owner in the event of any default by Owner hereunder, and no other property or assets of such Owner (or any partner, member, officer or director thereof, disclosed or undisclosed), shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this lease, the relationship of Owner and Tenant hereunder, or Tenant's use and occupancy of the demised premises.

**\*\* Security due upon signing of lease**

𝕴𝖓 𝖂𝖎𝖙𝖓𝖊𝖘𝖘 𝖂𝖍𝖊𝖗𝖊𝖔𝖋, Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Jane Goldman, Allan Goldman and Louisa  Little
As Co-Trustees of The Lillian Goldman Marital
Trust C/O Lighthouse Properties

Witness for Owner:

..............................................

Witness for Tenant:

..............................................

Abdul..Rashid..and..Sadaqut..Ali..Butt.............

ABDUL RASHID       SADAQAT ALiBut

## ACKNOWLEDGEMENTS

**CORPORATE OWNER**
**STATE OF NEW YORK,**   **ss.:**
**County of**

On this           day of                     , 19      ,
before me personally came
to me known, who being by me duly sworn, did depose and say that
he resides in
that he is the                              of
the corporation described in and which executed the foregoing
instrument, as OWNER; that he knows the seal of said corporation;
the seal affixed to said instrument is such corporate seal; that it was
so affixed by order of the Board of Directors of said corporation,
and that he signed his name thereto by like order.

..............................................

**CORPORATE TENANT**
**STATE OF NEW YORK,**   **ss.:**
**County of**

On this           day of                     , 19      ,
before me personally came
to me known, who being by me duly sworn, did depose and say that
he resides in
that he is the                              of
the corporation described in and which executed the foregoing
instrument, as TENANT; that he knows the seal of said corporation;
the seal affixed to said instrument is such corporate seal; that it was
so affixed by order of the Board of Directors of said corporation,
and that he signed his name thereto by like order.

..............................................

**INDIVIDUAL OWNER**
**STATE OF NEW YORK,**   **ss.:**
**County of**

On this           day of                     , 19      ,
before me personally came
to be known and known to me to be the individual
described in and who, as OWNER, executed the foregoing instru-
ment and acknowledged to me that                              he
executed the same.

..............................................

**INDIVIDUAL TENANT**
**STATE OF NEW YORK,**   **ss.:**
**County of**

On this           day of                     , 19      ,
before me personally came
to be known and known to me to be the individual
described in and who, as TENANT, executed the foregoing
instrument and acknowledged to me that                              he
executed the same.

..............................................

# GUARANTY

The undersigned Guarantor guarantees to Owner, Owner's successors and assigns, the full performance and observance of all the agreements to be performed and observed by Tenant in the attached Lease, including the "Rules and Regulation" as therein provided, without requiring any notice to Guarantor of nonpayment, or nonperformance, or proof, or notice of demand, to hold the undersigned responsible under this guaranty, all of which the undersigned hereby expressly waives and expressly agrees that the legality of this agreement and the agreements of the Guarantor under this agreement shall not be ended, or changed by reason of the claims to Owner against Tenant of any of the rights or remedies given to Owner as agreed in the attached Lease.  The Guarantor further agrees that this guaranty shall remain and continue in full force and effect as to any renewal, change or extension of the Lease.  As a further inducement to Owner to make the Lease Owner and Guarantor agree that in any action or proceeding brought by either Owner or the Guarantor against the other on any matters concerning the Lease or of this guaranty that Owner and the undersigned shall and do waive trial by jury.

Dated: ................................................ 19 .......

................................................
Guarantor

................................................
Witness

Guarantor's Residence
................................................

Business Address
................................................

Firm Name
................................................

STATE OF NEW YORK                )
                                                    ) ss.:
COUNTY OF                              )

On this                  day of                            ,19        ,
before me personally came .................................................
to me known and known to me to be the individual described in, and who executed the foregoing Guaranty and acknowledged to me that he executed the same.

................................................
                                                          Notary

 **IMPORTANT - PLEASE READ** 

## RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE IN ACCORDANCE WITH ARTICLE 35.

**1.** The sidewalks, entrances, driveways, passages, courts, elevators, vestibules, stairways, corridors or halls shall not be obstructed or encumbered by any Tenant or used for any purpose other than for ingress to and egress from the demised premises and for delivery of merchandise and equipment in a prompt and efficient manner using elevators and passageways designated for such delivery by Owner.  There shall not be used in any space, or in the public hall of the building, either by any tenant or by jobbers, or others in the delivery or receipt of merchandise, any hand trucks except those equipped with rubber tires and safeguards.

**2.** If the premises are situated on the ground floor of the building, Tenant thereof shall further, at Tenant's expense, keep the sidewalks and curb in front of said premises clean and free from ice, snow, etc.

**3.** The water and wash closets and plumbing fixtures shall not be used for any purposes other than those for which they were designed or constructed.

**4.** Tenant shall not use, keep or permit to be used or kept any foul or noxious gas or substance in the demised premises, or permit or suffer the demised premises to be occupied or used in a manner offensive or objectionable to Owner or other occupants of the building by reason of noise, odors and/or vibrations or interfere in any way with other Tenants or those having business therein.

**5.** No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed by any Tenant on any part of the outside of the demised premises or the building or on the inside of the demised premises if the same is visible from the outside of the premises without the prior written consent of Owner, except that the name of Tenant may appear on the entrance door of the premises.  In the event of the violation of the foregoing by any Tenant, Owner may remove same without any liability and may charge the expense incurred by such removal to Tenant or Tenants violating this rule.  Signs on interior doors and directory tablet shall be inscribed, painted or affixed for each Tenant by Owner at the expense of such Tenant, and shall be of a size, color and style acceptable to Owner.

**6.** No Tenant shall mark, paint, drill into, or in any way deface any part of the demised premises or the building of which they form a part.  No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Owner, and as Owner may direct.  No Tenant shall lay linoleum, or other similar floor covering, so that the same shall come in direct contact with the floor of the demised premises, and, if linoleum or other similar floor covering is desired to be used an interlining of builder's deadening felt shall

be first affixed to the floor, by a paste or other material, soluble in water, the use of cement or other similar adhesive material being expressly prohibited.

**7.** Freight, furniture, business equipment, merchandise and bulky matter of any description shall be delivered to and removed from the premises only on the freight elevators and through the service entrances and corridors, and only during hours and in a manner approved by Owner.  Owner reserves the right to inspect all freight to be brought into the building and to exclude from the building all freight which violates any of these Rules and Regulations or the lease of which these Rules and Regulations are a part.

**8.** Owner reserves the right to exclude from the building between the hours of 6 P.M. and 8 A.M. and at all hours on Sundays, and holidays all persons who do not present a pass to the building signed by Owner.  Owner will furnish passes to persons for whom any Tenant requests same in writing.  Each Tenant shall be responsible for all persons for whom he requests such pass and shall be liable to Owner for all acts of such person.

**9.** Owner shall have the right to prohibit any advertising by any Tenant which, in Owner's opinion, tends to impair the reputation of Owner or its desirability as a building for stores or offices, and upon written notice from Owner, Tenant shall refrain from or discontinue such advertising.

**10.** Tenant shall not bring or permit to be brought or kept in or on the demised premises, any inflammable, combustible, or explosive, or hazardous fluid, material, chemical or substance, or cause or permit any odors of cooking or other processes, or any unusual or other objectionable odors to permeate in or emanate from the demised premises.

**11.** Tenant shall not place a load on any floor of the demised premises exceeding the floor load per square foot area which it was designed to carry and which is allowed by law.  Owner reserves the right to prescribe the weight and position of all safes, business machines and mechanical equipment.  Such installations shall be placed and maintained by Tenant at Tenant's expense in setting sufficient in Owner's judgement to absorb and prevent vibration, noise and annoyance.

**12.** Refuse and Trash - Tenant covenants and agrees, at its sole cost and expense, to comply with all present and future laws, orders and regulations of all state, federal, municipal and local governments, departments, commissions and boards regarding the collection, sorting, separation and recycling of waste products, garbage, refuse and trash.  Tenant shall pay all costs, expenses, fines, penalties or damages that may be imposed on Owner or Tenant by reason of Tenant's failure to comply with the provisions of this Building Rule 12, and, at Tenant's sole cost and expense, shall indemnify, defend and hold Owner harmless (including reasonable legal fees and expenses) from and against any actions, claims and suits arising from such non-compliance, utilizing counsel reasonably satisfactory to Owner.

---

Address ................................................

Premises ................................................

TO

**STANDARD FORM OF**

*Store Lease*

The Real Estate Board of New York, Inc.
© Copyright 1994.  All rights Reserved.
Reproduction in whole or in part prohibited.

Dated ........................ 19 ......

Rent Per Year ................................................

.... Per Month ................................................

Term ................................................
From ................................................
To ................................................

Drawn by ................................................
Checked by ................................................
Entered by ................................................
Approved by ................................................

*Estate of Sol Goldman*
*640 Fifth Avenue*
*3rd Floor*
*New York, NY 10019*

*Tel: (212) 265-2280*                                             *Fax: (212) 582-0186*

JUNE 6, 2001

ABDUL RASHID AND SADAQUT ALI BUTT
916-918 THIRD AVE
NY NY

Re:    Lease dated MAY 17, 1995 AND MODIFIED MAY 25, 2000,
by between JANE GOLDMAN, ALLAN GOLDMAN AND LOUISA LITTLE
AS CO-TRUSTEES OF THE LILLIAN GOLDMAN MARITAL TRUST C/O
LIGHTHOUSE PROPERTIES as Landlord and ABDUL RASHID AND
SADAQUT ALI BUTT as Tenant covering store premises known
as 916-918 THIRD AVE, NY NY
SMC# 204/729 971-3

Gentlemen:

        This letter shall be deemed a binding agreement between
the parties when same has been duly executed. The above
captioned lease agreement shall be amended as follows:

        1)      The rent provided for under said lease for the
period from JUNE 1, 2001, through MAY 31, 2002 shall be
amended as follows:

        ONE HUNDRED TWO THOUSAND DOLLARS ($102,000.00) per
annum payable in monthly installments of EIGHT THOUSAND FIVE
HUNDRED DOLLARS ($8,500.00).

        2).     Except as hereinabove specifically amended, all
of the remaining terms, covenants and conditions of lease
dated MAY 17, 1995 ~~AND MODIFIED 25, 2000~~, shall remain the
same.

AGREED AND ACCEPTED                  AGREED AND ACCEPTED
JANE GOLDMAN, ALLAN GOLDMAN          ABDUL RASHID AND SADAQUT
AND LOUISA LITTLE AS CO-             ALI BUTT
TRUSTEES OF THE LILLIAN GOLDMAN
MARITAL TRUST C/O LIGHTHOUSE
PROPERTIES

_____              _____
LANDLORD                             TENANT

*Estate of Sol Goldman*
*640 Fifth Avenue*
*3rd Floor*
*New York, NY 10019*

*Tel: (212) 265-2280*                                                    *Fax: (212) 582-0186*

MAY 25, 2000

ABDUL RASHID AND SADAQUT ALI BUTT
916-918 THIRD AVE
NY NY

Re:     Lease dated **MAY 17, 1995**, by between **JANE GOLDMAN,
ALLAN GOLDMAN AND LOUISA LITTLE AS CO-TRUSTEES OF THE
LILLIAN GOLDMAN MARITAL TRUST C/O LIGHTHOUSE PROPERTIES** as
Landlord and **ABDUL RASHID AND SADAQUT ALI BUTT** as Tenant
covering store premises known as **916-918 THIRD AVE, NY NY**
SMC# 204/7295 ʃʒ ~ᵶ

Gentlemen:

    This letter shall be deemed a binding agreement between
the parties when same has been duly executed. The above
captioned lease agreement shall be amended as follows:

    1)    The rent provided for under said lease for the
period from **JUNE 1, 2000**, through **MAY 31, 2001** shall be
amended as follows:

    **NINETY SIX THOUSAND DOLLARS ($96,000.00)** per annum
payable in monthly installments of **EIGHT THOUSAND DOLLARS
($8,000.00)**.

    2).    Except as hereinabove specifically amended, all
of the remaining terms, covenants and conditions of lease
dated **MAY 17, 1995**, shall remain the same.

AGREED AND ACCEPTED                    AGREED AND ACCEPTED
JANE GOLDMAN, ALLAN GOLDMAN            ABDUL RASHID AND SADAQUT ALI BUTT
AND LOUISA LITTLE AS CO-
TRUSTEES OF THE LILLIAN GOLDMAN
MARITAL TRUST C/O LIGHTHOUSE
PROPERTIES


_____               _____
LANDLORD                              TENANT

Page 1
ADDITIONAL CLAUSES attached to and forming part of a lease dated May 17, 1995, by and between **JANE GOLDMAN, ALLAN GOLDMAN AND LOUISA LITTLE AS CO-TRUSTEES OF THE LILLIAN GOLDMAN MARITAL TRSUT C/O LIGHTHOUSE PROPERTIES** as Landlord and **ABDUL RASHID AND SADAQUT ALI BUTT** as Tenant.

---

40.   The Tenant and Landlord herein agree that in the event of a conflict between the printed form and the attached riders, then and in that event, the language of the rider shall prevail as to the intent of the parties. It is further understood and agreed that the Tenant has examined the leased premises and herein agrees to accept possession of same in its "as is" condition and to make all of the required repairs to the demised premises including repairing the roof and sidewalk.

41.   In addition to the monthly rental as set forth herein, it is understood and agreed that the Tenant shall pay as additional rent, TWENTY FIVE (25%) Percent of any and all increases in real estate taxes, or assessments for public betterment, covering the Block #1310 and Lot #34/35. Said charge shall be the amount charged by the City of New York above the charge for the tax year ending June 30, 1996.   Payment of such additional rental shall be made as billed by the Landlord, except, however, the first and last year of the lease term shall be pro-rated.

42.   It is understood and agreed that the Tenant shall pay for all utilities consumed by him in the leased premises including but not limited to electricity, gas, hot water, water and sewer charges, fuel for heating and to maintain his own heating equipment. The Tenant may, if he so elects, at his own cost and expense install air-conditioning provided that such installation be in accordance with all of the rules and regulations of all governmental bodies having jurisdiction thereof.

43.   The Tenant at his own cost and expense may install a sign or signs upon the exterior of the demised premises. Such sign or signs must comply with all of the rules and regulations of all governmental bodies having jurisdiction and after obtaining any and all necessary permits, all at the cost and expense of the Tenant. The Tenant further covenants and agrees to indemnify and hold the Landlord harmless from any and all damage and/or liability in connection with such sign or signs. The Tenant shall submit plans or sketches of the proposed sign/signs to the Landlord for his prior written approval, such approval not to be unreasonably withheld.

44.   The Landlord shall not be responsible for exterminating services to the premises. The Tenant shall provide such service at its own cost and expense.

PLEASE
INITIAL



Page 2
ADDITIONAL CLAUSES attached to and forming part of a lease dated
May 17, 1995, by and between **JAND GOLDMAN, ALLAN GOLDMAN AND LOUISA
LITTLE AS CO-TRUSTEES OF THE LILLIAN GOLDMAN MARITAL TRUST C/O
LIGHTHOUSE PROPERTIES** as Landlord and **ABDUL RASHID AND SADAQUT ALI
BUTT** as Tenant.

---

45.  The Landlord shall not be responsible for rubbish removal.
The Tenant shall provide such service at its own cost and expense.

46.  The Tenant shall insure the plate glass on the demised
premises at its own cost and expense and supply the Landlord with
rent insurance for the benefit of both the Landlord and Tenant
naming both as assured on the policy. The Tenant shall obtain at
its own cost and expense with both the Landlord and Tenant as named
assured, fire insurance for all personal property which may be
affixed to the realty now located in the leased premises and
including future installations. The items to be insured by the
Tenant shall include: wall furnishings, ceiling and lighting, floor
and floor covering, air-conditioning and heating equipment and
including entire store front and sign.

47.  The Tenant covenants and agrees to provide the Landlord within
ten (10) days from the commencement date hereof and for the
duration of the term of this lease with a comprehensive policy of
general liability insurance in which the Tenant and the Landlord
are the named insured, for any and all claims arising during the
term of this lease for damages or injuries to goods, wares,
merchandise and property and/or for any personal injury or loss of
life, in, upon or about the demised premises; protecting the
Landlord and the Tenant against any liability whatsoever occasioned
by accidents on or about the demised premises or any appurtenances
thereto.   Such policy is to be written by a good and solvent
insurance company, satisfactory to the Landlord, in the amount of
FIVE HUNDRED THOUSAND ($500,000) DOLLARS in respect to any one
person, in the amount of ONE MILLION, ($1,000,000) DOLLARS in
respect to any one accident, and in the amount of ONE HUNDRED
THOUSAND ($100,000) DOLLARS in respect to property damage. The
Tenant agrees to deliver to the Landlord a duplicated original of
the aforesaid insurance policy and upon the Tenant's failure to
provide and keep in force the aforementioned insurance, it shall be
regarded as a material default entitling the Landlord to exercise
any or all of the remedies provided in this lease in the event of
the Tenant's default. In the event the Tenant shall fail to
promptly furnish any insurance herein required, the Landlord may
effect same and pay the premium therefore, for a period not to
exceed one year, and the premium so paid by the landlord shall be
payable by the Tenant upon demand as additional rent.



PLEASE
INITIAL

Page 3

ADDITIONAL CLAUSES attached to and forming part of a lease dated May 17, 1995, by and between **JANE GOLDMAN, ALLAN GOLDMAN AND LOUISA LITTLE AS CO-TRUSTEES OF THE LILLIAN GOLDMAN MARITAL TRUST C/O LIGHTHOUSE PROPERTIES** as Landlord and **ABDUL RASHID AND SADAQUT ALI BUTT** as Tenant.

---

48.  Anything to the contrary notwithstanding, the Tenant is not obligated for any structural repairs; however, it is understood and agreed that structural repairs are defined as Building Foundations, Separating Walls enclosing the leased premises, (excluding the store front), Vertical Supporting Beams, Horizontal Supporting Beams of the floor and roof. The aforementioned items are to be maintained, repaired or replaced by the Landlord at its own cost and expense as expeditiously as possible; however, the Tenant agrees to give any cooperation to the Landlord's contractor for access to such repairs at a reasonable time with a minimum of interference to the Tenant's business without any abatement of rent.

49.  It is understood and agreed that the Tenant herein agrees not to use the sidewalk for any retail purposes and that the Tenant shall keep the sidewalk abutting the demises premises clean and free of all debris, ice, snow, etc. and in good condition and state of repair.

50.  In the event the Landlord wishes to modernize the store front facade of the entire building to conform with the upgrading and lighting and/or sidewalk air-conditioning that may be required to permit higher traffic, then and in that event, the Tenant herein agrees that he will share the costs of the improvements of his store front together with the Landlord, provided that the Tenant's store front and illuminated store sign is more than five (5) years old at the time of the proposed improvement.

51.  NO BROKER: Tenant represents that it has had no conversations with any broker concerning the renting of the demised premises, and that no broker was instrumental in obtaining the execution of this lease, and the Tenant agrees to indemnify and hold the Landlord harmless for any and all claims for brokerage commissions.

52.  ADDENDUM TO PARAGRAPH 17: It is understood and agreed that the basic rent will be paid on or before the 5th day of each month to the Landlord without a notice. In the event the rental is unpaid for more that fifteen days, then the Landlord will be entitled to a late charge of 4% of the monthly rental provided said rent is paid within thirty days. It is further understood and agreed that if the Tenant is in default in payment of the basic rent for more than sixty (60) days, then this lease shall be deemed terminated and the Landlord may re-enter the premises.



PLEASE INITIAL

Page 4
ADDITIONAL CLAUSES attached to and forming part of a lease dated May 17, 1995, by and between **JANE GOLDMAN, ALLAN GOLDMAN AND LOUISA LITTLE AS CO-TRUSTEES OF THE LILLIAN GOLDMAN MARITAL TRUST C/O LIGHTHOUSE PROPERTIES** as Landlord and **ABDUL RASHID AND SADAQUT ALI BUTT** as Tenant.

---

53.   This lease may not be changed orally.

54.   It is understood and agreed that this lease shall not be binding upon the Landlord unless and until it is executed by a duly authorized officer of **JANE GOLDMAN, ALLAN GOLDMAN AND LOUISA LITTLE AS CO-TRUSTEES OF THE LILLIAN GOLDMAN MARITAL TRUST C/O LIGHTHOUSE PROPERTIES**

55.   The Tenant agrees that any and all insurance policies for the benefit of Tenant will contain a provision that the insurance carrier will not surrogate any claim against the Landlord; and the Landlord agrees that any and all insurance policies for the benefit of the Landlord affecting these leased premises will contain a provision that the insurance carrier will not affect any subrogation against the Tenant.

56.   Transfer, sale, assignment or other disposition (except testate or intestate disposition to legatees or distributees by reason of death) of any portion or all of the capital stock of Tenant, including legal or beneficial title or interest therein shall be equivalent of an assignment of this lease and shall be subject to the restrictions set forth in this lease including but not limited to Article 11.

57.   Tenant shall service, maintain and replace, as necessary, the existing clorodosa, grease trap and ansul system if same exists on the demised premises and shall be fully responsible for any maintenance needed in the sewage system by reason of collection of grease or other debris from the demised premises.

58.   Tenant, at his own cost and expense, will furnish, install and maintain a water meter, and pay for all water used by him promptly upon rendition of bills, and in no event later than five (5) days after such rendition. At the same time Tenant pays the aforesaid water charge to Landlord, he shall pay an additional percentage thereof (or whatever percentage is dictated by the City of New York if the premises be in the City of New York) for sewer charge. Tenant shall maintain and service, and replace if necessary, the plumbing and sewer lines and fixtures solely affecting the demised premises, in default whereof Landlord may, but is not required to, maintain and repair same and charge Tenant for the cost thereof, together with 15% overhead.

PLEASE
INITIAL



Page 5

ADDITIONAL CLAUSES attached to and forming apart of a lease dated May 17, 1995, by and between **JANE GOLDMAN, ALLAN GOLDMAN AND LOUISA LITTLE AS CO-TRUSTEES OF THE LILLIAN GOLDMAN MARITAL TRUST C/O LIGHTHOUSE PROPERTIES** as Landlord and **ABDUL RASHID AND SADAQUT ALI BUTT** as Tenant.

---

58. (CONT.)

In the event that Tenant fails to pay any water charge within ten (10) days of billing, Landlord may, without further notice, turn off the water supply to the premises together with such other remedies as may be available, which service shall not thereafter be restored until Tenant pays the disconnection and reconnection charge together with any arrears in water and sewer charges.

59. All checks tendered to the Landlord as and for the rent of the demised premises shall be deemed payments for the account of Tenant. Acceptance by the Landlord of rent from anyone other than the Tenant shall not be deemed to operate as an attornment to the Landlord by the payor of such rent or as a consent by the Landlord to an assignment or subletting by the Tenant of the demised premises to such payor, or as a modification of the provisions of this lease.

60. Any rent, additional rent, charges or expenses hereunder shall be paid by Lessee pursuant to the terms of this lease. However, in the event that Lessee is in default in the payment of rent, additional rent charges or expenses, Lessor shall have the right to apply any payment received from Lessee hereunder, regardless of any annotation or demand for specific application on the part of Lessee, to any rent, additional rent, charges or expenses which are in arrears. The application of the payment shall be made in the sole discretion of Lessor so long as the payment is applied to money due and owing by Lessee to Lessor hereunder.

61. Anything to the contrary notwithstanding, Tenant must procure within ten (10) days from the commencement of this lease, water damage insurance in the minimum amount of $50,000.00 covering the subject premises with a non-subrogation provision as against the Landlord for any water damage that may be sustained in the subject premises. Failure to do so shall constitute a release of any and all liability for such claim by the Tenant against the Landlord.

62. RENT:

EIGHT FOUR THOUSAND ($84,000.00) DOLLARS per annum payable in monthly installments of SEVEN THOUSAND ($7,000.00) DOLLARS from 6/1/95 to 5/31/96;

NINETY SIX THOUSAND ($96,000.00) DOLLARS per annum payable in monthly installments of EIGHT THOUSAND ($8,000.00) DOLLARS from 6/1/96 to 5/31/2000;

PLEASE INITIAL

𝒫 | A·R

Page 6
ADDITIONAL CLAUSES attached to and forming part of a lease dated
May 17, 1995, by and between **JANE GOLDMAN, ALLAN GOLDMAN AND LOUISA
LITTLE AS CO-TRUSTEES OF THE LILLIAN GOLDMAN MARITAL TRUST C/O
LIGHTHOUSE PROPERTIES** as Landlord and **ABDUL RASHID AND SADAQUT ALI
BUTT** as Tenant.

---

62.   RENT:(CONT.)

ONE HUNDRED EIGHT THOUSAND ($108,000.00) DOLLARS per annum
payable in monthly installments of NINE THOUSAND ($9,000.00)
DOLLARS from 6/1/2000 to 5/31/2005.

63.   HOLDING OVER.
Except as otherwise set forth in this Lease, should Tenant hold
over in possession after the Expiration Date, such holding over
shall not be deemed to extend the term or to renew this Lease; but
the occupancy thereafter shall continue as an occupancy from month
to month upon the terms and conditions herein contained and at the
fixed annual rent TWO HUNDRED SIXTEEN THOUSAND ($216,000.00)
DOLLARS of per annum, payable in monthly installments of EIGHTEEN
THOUSAND ($18,000.00) DOLLARS.

64.   Each of the individuals executing this agreement on behalf of
the Trust is executing this agreement in his of her capacity as
trustee of the Trust (and not in his or her individual capacity).
Notwithstanding anything contained herein to the contrary, the
execution and delivery by the trustees of the Trust of this
agreement shall not be deemed to create any individual liability or
obligation of such trustees.



PLEASE
INITIAL

Page 7

ADDITIONAL CLAUSES attached to and forming part of a lease dated May 17, 1995, by and between **JANE GOLDMAN, ALLAN GOLDMAN AND LOUISA LITTLE AS CO-TRUSTEES OF THE LILLIAN GOLDMAN MARITAL TRUST C/O LIGHTHOUSE PROPERTIES** as Landlord and **ABDUL RASHID AND SADAQUT ALI BUTT** as Tenant.

65.   The term "Landlord" or owner as used in this Lease shall at any given time mean the person or persons, corporation or corporations, or other entity or entities who are the owner or owners of the reversionary estate of Lessor in and to the demised premises. In the event of any conveyance or other divestiture of title to the reversionary estate of Landlord in and to the demised premises the person or persons, corporation or corporations, or other entity or entities who are divested of its or their interest in the demised premises shall be entirely freed and relieved of all covenants and obligations thereafter accruing hereunder, and the person or persons, corporation or corporations, or other entity or entities who succeeds or succeed to said interest in the demised premises shall be deemed to have assumed the covenants and obligations of Lessor thereafter accruing hereunder, and until the next divestiture of title, Lessee shall look solely to said successor for the observance and performance of the covenants and obligations of Landlord hereunder so assumed by said successor. Neither Landlord nor any successor of Landlord shall be personally liable for any monetary judgment obtained against it as a result of nonperformance of any obligations under this Lease, and Tenant shall look only to the interest of Landlord and its successors in and to the demised premises for satisfaction of any such judgment. The Tenant agrees to attorn to any such successor of Landlord.

66.   It is understood and agreed that the within lease may be assigned TWO (2) time during its term for the same purpose as provided in paragraph number two hereof provided tenant obtains Landlord's prior written consent, such consent not to be unreasonably withheld. In the event tenant makes such assignments Landlord shall have the right to request and receive additional security in an amount equal to one month's rent on such assignments. Tenant shall be required to furnish the Landlord with a duplicate original of the assignment within ten (10) days of its execution.



Page 8

ADDITIONAL CLAUSES attached to and forming part of a lease dated
May 17, 1995, by and between **JANE GOLDMAN, ALLAN GOLDMAN AND LOUISA
LITTLE AS CO-TRUSTEES OF THE LILLIAN GOLDMAN MARITAL TRUST C/O
LIGHTHOUSE PROPERTIES** as Landlord and **ABDUL RASHID AND SADAQUT ALI
BUTT** as Tenant.

---

67.  It is understood and agreed that the tenant shall have the
right to use and occupy the demised premises rent free for the
period of THREE (3) months commencing June 1, 1995 and expiring
August 31, 1995. Regular monthly rental to commence as of September
1, 1995.

68.  It is understood and agreed that the within tenant shall have
the right to assign the within lease to a corporation of which he
is a major stockholder provided that a duplicate original of the
assignment and assumption agreement be provided to the landlord
within ten (10) days of such assignment. Such assignment must be
made within sixty (60) days from the commencement date of the term
hereof.  Upon such assignment the individual tenant herein shall be
relived of liability hereunder.

𝒫   A·R

Page 9
ADDITIONAL CLAUSES attached to and forming part of a lease dated May 17, 1995, by and between **JANE GOLDMAN, ALLAN GOLDMAN AND LOUISA LITTLE AS CO-TRUSTEES OF THE LILLIAN GOLDMAN MARITAL TRUST C/O LIGHTHOUSE PROPERTIES** as Landlord and **ABDUL RASHID AND SADAQAT ALI BUTT** as Tenant.

---

GUARANTEE BY INDIVIDUAL"

    As consideration for the execution and delivery of this Lease by the Landlord and by execution hereof, _Abdul Rashid & Sadaqat Butt_ (hereinafter referred to as the Guarantor/Guarantors) does hereby acknowledge that, but for his guaranty of this lease, the Landlord would not deliver this lease to the Tenant. Accordingly, the Guarantor/Guarantors does/do hereby personally guaranty and warrant the payment and performance of all payments, covenants, obligations and agreements on the part of Tenant to be paid or performed hereunder up to and until delivery of vacant possession of the demised premises to the Landlord. Upon the delivery of such vacant possession to the Landlord, the obligations and liabilities of the Guarantor/Guarantors hereunder shall be limited to those payments, covenants, obligations and agreements accrued and owed up to date of such delivery of possession and Guarantor/Guarantors shall have no personal obligation or liability for any such payments, covenants, obligations and agreements accruing after the date of such delivery.

_____
                                    GUARANTOR

_____
                                    GUARANTOR


STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF _NY_           )

    On the _23_ day of _May_ , 1995, before me personally came, _Abdul Rashid & Sadaqat Butt_ , to me known and know to me to be the individual described in and who being by me duly sworn, did depose and say that he/she they resides at _501 E 83rd St N4C 10028_ respectively, and who executed the foregoing guarantee and acknowledge to me he/she/they executed the same.

MARITZA MENDEZ
Notary Public, State of New York
No. 41-4900626
Qualified in Queens County
Commission Expires July 13, 19___

_____
NOTARY PUBLIC